```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - :
KESHIA FOSTER, et al.,              :   14 Civ. 4142 (PGG)(JCF)
                                    :
             Plaintiffs,            :   ┌─────────────────────────┐
                                    :   │ USDS SDNY               │
     - against -                    :   │ DOCUMENT                │
                                    :   │ ELECTRONICALLY FILED    │
CITY OF NEW YORK,                   :   │ DOC #: _____  │
                                    :   │ DATE FILED: 2/5/16      │
             Defendant.             :   └─────────────────────────┘
- - - - - - - - - - - - - - - - - - :
ELIANA DE LA CRUZ, et al.,          :   14 Civ. 9220 (PGG)(JCF)
                                    :
             Plaintiffs,            :
                                    :       MEMORANDUM
     - against -                    :       AND ORDER
                                    :
CITY OF NEW YORK,                   :
                                    :
             Defendant.             :
- - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This discovery dispute concerns the scope of the implied waiver of attorney-client privilege and work product immunity that arises when a litigant defends against a claim by relying on the advice of its counsel. The plaintiffs have filed a motion to compel production of documents and testimony contending that the waiver is expansive, exposing to discovery not only communications between counsel for the defendant and defendant's employees concerning the relevant topic, but also internal communications and other information created by counsel and not communicated to the defendant. The defendant suggests a more tailored waiver. In the present circumstances of this case, information not communicated to the client need not be disclosed. The plaintiffs' motion is granted in part and denied in part.

1

Background

In these cases, the plaintiffs in Foster v. City of New York, 14 Civ. 4142, who are employees of the New York City Administration for Children's Services ("ACS"), and the plaintiffs in De la Cruz v. City of New York, 14 Civ. 9220, who are employees of the New York City Human Resources Administration ("HRA"), claim that the City of New York (the "City") willfully violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., by failing to pay overtime compensation.[1]  (Second Amended Complaint, ¶¶ 37, 43,

---

[1] Foster originally included plaintiffs from both agencies. However, the defendant represented that relevant timekeeping procedures may have differed depending on the agency employing a particular plaintiff. (Letter of Gregory K. McGillivray dated Sept. 10, 2014, at 2). Therefore, pursuant to an agreement among the parties, the claims of those plaintiffs employed by HRA were severed from the Foster case and assigned a separate docket number, thus becoming the De la Cruz case. (Order dated Nov. 11, 2014).

The motion I address here has been filed in both actions. (Notice of Motion in Support of Plaintiffs' Motion to Compel Production of Documents and Testimony Regarding Defendant's Efforts to Comply with the Fair Labor Standards Act (FLSA) (Docket no. 57 in Foster v. City of New York); Notice of Motion in Support of Plaintiffs' Motion to Compel Production of Documents and Testimony Regarding Defendant's Efforts to Comply with the Fair Labor Standards Act (FLSA) (Docket no. 56 in De la Cruz v. City of New York)). Because the submissions in the two cases tend to be substantively identical in material ways, I will generally cite the submissions in Foster only.

The defendant has filed in both cases the same opposition brief, headed with the De la Cruz caption and referring exclusively to the De la Cruz plaintiffs and the agency (HRA) that employs them (although there is a single inexplicable reference to ACS (Defendant's Opposition to Plaintiffs' Motion to Compel Production of Documents and Testimony ("Def. Memo.") at 4)). However, the plaintiffs indicate that they received a courtesy copy of an opposition prepared for the Foster case. (Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Production of Documents and Testimony Related to Defendant's Defense to Liquidated Damages ("Reply") at 1 n.1). I will assume that the City intended to file an appropriate opposition in Foster and that it would be

49, 55; Letter of Gregory K. McGillivary dated Aug. 21, 2014, at 1).[2]  The statute provides for an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation unless the defendant shows that it acted in good faith.  29 U.S.C. §§ 216(b), 260; see also Eschmann v. White Plains Crane Service, Inc., No. 11 CV 5881, 2014 WL 1224247, at *8 (E.D.N.Y. March 24, 2014).  That is, to avoid the award of liquidated damages, a defendant who has violated the overtime provisions of the FLSA must prove that it "acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the [statute]." Herman v. RSR Security Services Ltd., 172 F.3d 132, 142 (2d Cir. 1999).  To meet the subjective prong, "an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 150 (2d Cir. 2008) (quoting RSR Security Services, 172 F.3d at 142).

The defendant asserts it implemented policies and procedures "to ensure compliance with the FLSA after consultation with counsel for the City of New York."  (Def. Memo. at 2; Answer to Second

---

substantively similar in all material ways to its De la Cruz opposition.  I therefore cite only the De la Cruz opposition, making certain alterations in quoted material to reflect that its arguments apply to both sets of plaintiffs.

[2] The cited complaint is from the Foster case.  Oddly, the identical complaint, bearing the Foster caption and indicating that the plaintiffs are ACS employees, appears on the De la Cruz docket as the operative complaint.  (Second Amended Complaint (Docket no. 27 in De la Cruz v. City of New York).  This appears to be a mistake that the plaintiffs should correct.

Amended Complaint, ¶ 69).  The plaintiffs contend that the defendant, as a consequence of this defense, has broadly waived attorney-client privilege and work product immunity, and they ask the court to compel the defendant to produce (1) all relevant communications exchanged with the City's attorneys concerning the legality under the FLSA of the defendant's policies and its efforts to ensure compliance with the statute, including communications (a) between the New York City Law Department (the "Law Department") and the City's outside counsel, (b) between the Law Department and City employees outside the Law Department, and (c) between outside counsel and other City employees; (2) a privilege log describing communications the City believes are privileged; and (3) a witness to testify pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure as to the City's efforts to comply with the FLSA.  (Reply at 1).

Discussion

    A.   Legal Standards

The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); accord United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012).  The privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."

4

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  There does not appear to be a dispute here that the privilege may apply to communications between attorneys in the agencies' legal departments, the City's legal department, or the City's outside counsel and agency or City employees outside of those legal departments.

The work product doctrine "shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed R. Civ. P. 26(b)(3)).  It is designed to protect "mental impressions, conclusions, opinions or legal theories . . . concerning the litigation." United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(3)(B)).  The burden of establishing any right to protection is on the party asserting it, In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003), and is "not 'discharged by mere conclusory or ipse dixit assertions,'" In re Grand Jury Subpoena dated January 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984) (quoting In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965)).  The protection claimed must be narrowly construed and its application must be consistent with the purposes underlying the asserted immunity.  In re Grand Jury Subpoenas, 318 F.3d at 384.

"Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, '[t]hree conditions must be fulfilled in order for work product protection to apply.  The material must (1) be a document or a

5

tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" DeAngelis v. Corzine, Nos. 11 Civ. 7866, 12 MD 2338, 2015 WL 585628, at *4 (S.D.N.Y. Feb. 9, 2015) (alteration in original) (quoting In re Veeco Instruments, Inc. Securities Litigation, No. 05 MD 1695, 2007 WL 724555, at *4 (S.D.N.Y. March 9, 2007)). Work product immunity, however, stretches further than the rule indicates, to include "intangible work product: an attorney's analysis made in anticipation of litigation, but which has not been memorialized. Such work product is immune from discovery just as if it had been reduced to writing." Ghavami, 882 F. Supp. 2d at 539; see also United States v. Deloitte LLP, 610 F.3d 129, 136 (D.C. Cir. 2010) (holding that Hickman v. Taylor, 329 U.S. 495 (1947), "provides work-product protection for intangible work product independent of Rule 26(b)(3)").

A document is prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained because of the prospect of litigation." Adlman, 134 F.3d at 1202 (quoting 8 Charles A. Wright, et al., Federal Practice and Procedure § 2024 (1994)). "Although a document 'does not lose protection . . . merely because it is created in order to assist with a business decision,''[i]f, regardless of the prospect of litigation, the document would have been prepared anyway, in the ordinary course of business . . . , it is not entitled to work product protection.'" Chen-Oster v. Goldman, Sachs & Co., 293

6

F.R.D. 547, 552-53 (S.D.N.Y. 2013) (alterations in original) (quoting Adlman, 134 F.3d at 1202, and Clarke v. J.P. Morgan Chase & Co., No. 08 Civ. 2400, 2009 WL 970940, at *7 (S.D.N.Y. April 10, 2009)).

Both attorney-client privilege and work-product immunity "may implicitly be waived when [the] defendant asserts a claim that in fairness requires examination of protected communications." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991); see also John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) (noting that party waives both attorney-client and work product protection by placing substance of protected documents at issue); DeAngelis, 2015 WL 585628, at *6 ("The 'fairness doctrine' analysis applies to waiver of work-product protection just as it does to waiver of attorney-client privilege."). A person may waive protection where he "asserts a factual claim the truth of which can only be assessed by examination of a privileged communication," even is he does not explicitly rely on that communication. Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993). But the fact that a privileged communication may merely be relevant to a claim or defense is insufficient to forfeit protection. In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008); accord Aiossa v. Bank of America, N.A., No. 10 CV 1275, 2011 WL 4026902, at *5 (E.D.N.Y. Sept. 12, 2011). The paramount consideration is "[w]hether fairness requires disclosure," which must be determined "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." In re

7

Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000).

B.  Scope of Implied Waiver

The City's good faith defense has effected an implied waiver here.[3]  See, e.g., Scott v. Chipotle Mexican Grill, Inc., 67 F. Supp. 3d 607, 610 (S.D.N.Y. 2014) (quoting County of Erie, 546 F.3d at 228-29).  The question, as noted above, is the waiver's scope.

During the parties' negotiations about the scope of the implied waiver, the City asserted that "the scope of that waiver is limited, and would include only communications between legal and City officials responsible for making decisions relevant to the issues in the case."  (E-mail of Felice B. Ekelman dated Nov. 2, 2015 ("Ekelman E-mail"), attached as part of Exh. C to Declaration of Gregory K. McGillivary dated Nov. 23, 2015).  The defendant now agrees that it has waived protection over (1) "communications between HRA[,] [ACS,] or City officials responsible for implementing and approving [the relevant] HRA [and ACS] policies

---

[3] The City gets itself in a bit of a muddle on this point, stating that it does not concede that it has waived any protection ("The present discovery dispute concerns whether the assertion of the 'good faith defense' has waived the attorney-client and work product privileges, by placing the communications 'at issue,' and, if so, the scope of that waiver" (Def. Memo. at 2 (emphasis added)); "Defendant does not affirmatively waive any privileges, but to the extent that the Court finds that this [expected] testimony results in the implied waiver . . ." (Def. Memo. at 11)) but then asserting that "the [] issue of whether an implied waiver arises when the good faith defense is asserted . . . is not disputed here" (Def. Memo. at 16), and describing types of communications it concedes are included within the implied waiver (Def. Memo. at 2).  I understand the City to have conceded the issue not only by the representations in its opposition brief cited directly above, but also by failing to develop any argument that an implied waiver has not arisen, see, e.g., Chevron Corp. v. Donziger, No. 11 Civ. 691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013).

. . . and the lawyers from the Office of Corporation Counsel,[4] HRA's [and ACS's] legal department[s] or outside counsel," and (2) "communications between lower level employees and attorneys from the Office of Corporation Counsel, HRA's [or ACS's] legal department[s][,] or outside counsel if those communications were relevant to the advice provided by those attorneys to the HRA[,] [ACS,] or City officials in implementing the policies at issue."[5] (Def. Memo. at 2). The defendant thus appears to have agreed that the implied waiver includes communications between attorneys working on behalf of the City and non-attorney City or agency employees "concerning the legality of defendant's policies and efforts to ensure that its policies are in compliance with the FLSA" (Def. Memo. at 3), and that attorney-client privilege and work product immunity shield only communications among counsel, that is:

> (1) internal communications between attorneys at HRA [and ACS] regarding legal advice or work product relating to the policies and practices at issue in this litigation that were prepared in anticipation of this litigation; (2) internal communications between attorneys of Corporation Counsel regarding legal advice or work product relating to the policies and practices at issue in this litigation that were prepared in anticipation of this litigation; (3) internal communications between HRA [and ACS] and Corporation counsel attorneys regarding legal advice or work product relating to the policies and practices at issue in this litigation that were prepared in anticipation of this litigation; and (4)

---

[4] For the purposes of this opinion, the "Law Department" is the same as the "Office of Corporation Counsel."

[5] Actually, the City states that it "never asserted the scope of the implied waiver would not also include" this second category of documents (Def. Memo. at 2), though this statement is difficult to square with the position taken in the Ekelman E-mail.

> communications between Corporation Counsel attorneys and outside counsel regarding legal advice or work product relating to the policies and practices at issue in this litigation that were prepared in anticipation of this litigation.

(Def. Memo. at 4).

But not so fast. In what looks suspiciously like an about-face, the defendant later asks that any waiver of the attorney-client privilege

> be limited to disclosure of communications between attorneys for the Defendant and employees of HRA [and ACS] <u>who had the decision making authority to consider and implement procedures</u> intended to ensure Plaintiffs were paid correctly in accordance with the FLSA, as well as communications between attorneys for Defendant and relevant employees of the Official [sic] of Payroll Administration and Office of Labor Relations regarding the formulation and drafting of the CityTime certification (as both relate to claims asserted in this lawsuit).[6]

(Def. Memo. at 11-12 (emphasis added)). Put another way, the "waiver . . . only extends to communications between the attorney and . . . relevant decision-making authorities at the City," that is, "officials who had the authority to implement policies." (Def. Memo. at 13). The City's position thus appears rather confused.

In any case, the suggested limitations on the waiver over communications between attorneys working on behalf of the City and non-attorney City employees are inappropriate. The City has said it relied on the advice of counsel in formulating its FLSA

---

[6] The "CityTime certification" is a certification for the City's web-based timekeeping system by which employees submitting time sheets confirm that they have worked the claimed hours, including time worked in excess of scheduled hours that would entitle them to overtime compensation under the FLSA or a collective bargaining agreement. (Declaration of Georgia Pestana dated Dec. 11, 2015 ("Pestana Decl."), ¶¶ 4, 6).

10

compliance policies. It has therefore waived protection over communications related to legal advice about this compliance shared between attorneys and non-attorney employees, whether those employees are "decision-makers" or "lower level employees" who might provide input to the process. Indeed, to the extent that such advice was provided to employees completely disconnected from the decision-making chain, the City has waived attorney-client privilege over those communications, as well. See Scott v. Chipotle Mexican Grill, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015) (noting that employer's attorney-client privilege is vitiated by disclosure to employees "who are not in a position to act or rely on the legal advice contained in the communication" and collecting cases); Traficante v. HomeQ Servicing Corp., Civ. A. No. 9-746, 2010 WL 3167435, at *2 (W.D. Pa. Aug. 10, 2010) (collecting cases). Therefore, the defendant shall produce communications between counsel working on behalf of the City (whether from the Law Department, either of the agencies' legal departments, or outside counsel) and any non-attorney employee of the agencies or the City, as long as it is relevant to advice provided to the agencies or the City regarding the agencies' FLSA compliance.

The remaining category of information at issue is attorney-to-attorney communications. The plaintiffs contend that these are discoverable because the implied waiver either applies or it does not: the defendant's assertion of its good faith defense has waived privilege over all relevant communications related to FLSA compliance. But precedent teaches that implied waivers are

not such blunt instruments.  Rather, they must be "formulated with caution," In re County of Erie, 546 F.3d at 228; see also Enea v. Bloomberg L.P., No. 12 Civ. 4656, 2015 WL 4979662, at *6 (S.D.N.Y. Aug. 20, 2015) (describing scope of waiver arising from good faith defense as "ordinarily [] quite narrow" (quoting Seyler v. T-Systems North America, Inc., 771 F. Supp. 2d 284, 287-88 (S.D.N.Y. 2011))), "on a case-by-case basis" to be fair in light of the "specific context in which the privilege is asserted," In re Grand Jury Proceedings, 219 F.3d at 183.  Indeed, the Second Circuit has approved limited forms of implied waiver.  See id. ("We have also recognized that a more limited form of implied waiver may be appropriate where disclosure occurred in a context that did not greatly prejudice the other party in the litigation.").

The City argues that the good faith defense depends on its "state of mind" which could not have been influenced by information it never heard.  (Def. Memo. at 12-13).  The plaintiffs say that details of the attorneys' analysis must be disclosed because without such disclosure the City could shield itself from liquidated damages by citing advice of counsel even if counsel "engaged in no research into the facts nor applied the law properly to any facts in reviewing the legality of the City's policies and practices." (Pl. Memo. at 13).  To be sure, the reasonableness of the City's reliance on the advice of counsel could be undermined if, for example, the plaintiffs showed that counsel's legal analysis was cursory or otherwise obviously flawed.  However, this information would be of limited use to the plaintiffs unless they

12

could show that the City knew (or should have known) that the analysis was deficient. Communications between the various legal departments and non-attorney City and agency employees (which will be produced) should reveal what the client knew about the sufficiency of the analysis of FLSA compliance. At this point, however, it is not unfair to protect exclusively internal privileged communications, and the City need not disclose them.[7] Cf. Enea, 2015 WL 4979662, at *7-8 (requiring defendant to produce for in camera review protected communications regarding internal investigation into compliance only after discovery indicated that defendant's reliance on an opinion regarding legality under FLSA of employee classification may have been unreasonable).

C. Privilege Log

In its opening memo, the plaintiffs noted that the defendant had failed to produce a privilege log for over a year, placing them "in the precarious situation of requiring plaintiffs to file a motion to compel production of certain documents when plaintiffs do not even know that such documents exist, because defendant has never identified them." (Pl. Memo. at 18). The City apparently provided with its opposition a privilege log claiming attorney-

---

[7] The defendant contends that there are policy reasons to limit any waiver in this case, worrying over the "sanctity of the attorney-client privilege" and the potential hollowing-out of the FLSA's statutory defenses. (Def. Memo. at 24). I find those concerns hyperbolic for the reasons recently explained by the Honorable Sarah Netburn, U.S.M.J., in Scott, 67 F. Supp. 3d at 617 (rejecting defendant's policy concerns because defenses other than good faith are available to defendants and because a finding of waiver may "serve to encourage companies to receive competent legal advice and follow it").

client privilege and work product immunity over twelve documents.[8] (Defendant's First Privilege Log ("Privilege Log"), attached as Exh. A to Reply). The log is deficient.[9]

Local Civil Rule 26.2(a)(2) requires that where privilege is claimed over a document, the claimant must provide "the relationship of the author, addressees, and recipients to each other," unless that relationship is apparent. Local Civil Rule 26.2(a)(2)(A). The relationship among those identified on the privilege log is neither apparent nor described in the log. This is of particular import here because, without knowing such details, it is impossible to determine whether these communications fall into the category over which the privilege has been waived. Moreover, it is not clear that the log includes all documents over which the City claims protection. As the plaintiffs note, notwithstanding their broad discovery requests, the log lists only twelve documents, all created in a period of fewer than five months

---

[8] I say "apparently" because, although one of the declarations filed with the opposition indicates that a privilege log is attached (Pestana Decl., ¶ 3), no such document is included. The plaintiffs, however, attach the log to their reply, which also notes that although the document was produced only in the De la Cruz case, it reportedly applies to both actions. (Reply at 6 n.3).

[9] The plaintiffs assert that the log is also untimely under Local Civil Rule 26.2, which requires claims of privilege to be asserted "in writing at the time of the response" to the discovery request, and that therefore the City has waived all claims of privilege. Local Civil Rule 26.2(a), (b); (Pl. Memo. at 17-18; Reply at 6-7). Although the tardiness would be a basis for deeming the City's claims of privilege waived, I decline to do so. See, e.g., In re Chevron Corp., 749 F. Supp. 2d 170, 181-82 & n.50 (S.D.N.Y. 2010) (noting that judges have discretion to decline to enforce local rules).

in 2009, and all connected with the CityTime certification. (Reply at 8).

Additionally, the City's support for its claim of work product immunity over these same documents is insufficient. According to the defendant, prior to the roll-out of CityTime and the drafting of the certification, the City was named as a defendant in several cases alleging that employees were not paid for all time worked. (Pestana Decl., ¶¶ 4, 8). The City asserts that the certification "was drafted as an effort to eliminate future claims in the existing litigations, to avoid potential future litigation, and to ensure compliance with the FLSA generally." (Pestana Decl., ¶ 10).

As noted above, a document is not protected as work product if it would have been prepared in the ordinary course of business in the absence of litigation. Chen-Oster, 293 F.R.D. at 552-53. Moreover, "[g]eneralized steps to avoid non-specific litigation are not accorded work product protection." Id. at 553 (collecting cases). Indeed, "[t]o find that avoidance of litigation without more constitutes 'in anticipation of litigation' would represent an insurmountable barrier to normal discovery and could subsume all compliance activities by a company as protected from discovery." Id. (quoting In re Grand Jury Proceedings, No. M-11-189, 2001 WL 1167497, at *15 (S.D.N.Y. Oct. 3, 2001)).

Given these precepts, the declaration the City provides does not meet its burden of showing that the documents in its privilege log deserve work product protection. The mere statement that the subject documents were created to "avoid [unidentified] potential

15

future litigation[] and to ensure compliance with the FLSA generally" is not sufficient; rather, it indicates that the documents would have been created even in the absence of the then-active FLSA litigation the City cites. (Pestana Decl., ¶¶ 8-11). Indeed, the notion that the certification itself was prompted by litigation seems farfetched: it appears to be a standard declaration aimed at general FLSA compliance that is required before submission of any employee's CityTime time sheet. (Pestana Decl., ¶ 6). To be sure, the underlying materials over which protection has been claimed may have been directed more specifically at one or more <u>particular</u> FLSA actions that the City was litigating or reasonably anticipated. However, the City's submission does not establish that.

Rather than ordering disclosure of these documents, however, I will allow the defendant to provide the plaintiffs with a supplemented privilege log that addresses these concerns.

D.   <u>Deposition Witness</u>

In addition, the City must produce a witness to provide testimony pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure regarding the City's efforts to comply with the Fair Labor Standards Act. This opinion has clarified the extent of the City's waiver of privilege, as well as the requirements for a proper assertion of work product privilege. The deponent may interpose appropriate objections based on privilege when specific questions are asked. <u>See, e.g.</u>, <u>Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh</u>, No. 90 Civ. 7811,

1993 WL 34678, at *3 (S.D.N.Y. Feb. 4, 1993); cf. Travelers Casualty & Surety Co. v. J.D. Elliott & Co., No. 03 Civ. 9720, 2004 WL 2339549, at *2 (S.D.N.Y. Oct. 5, 2004) (litigant must produce deposition witness unless it has shown that any testimony witness could give would be privileged).

Conclusion

The plaintiffs' motions to compel (Docket no. 57 in Foster v. City of New York, 14 Civ. 4142; Docket no. 56 in De la Cruz v. City of New York, No. 14 Civ. 9220) are granted in part and denied in part as discussed above. Within fourteen days of the date of this order, the defendant shall (1) produce the documents over which it has waived privilege, (2) serve a supplemented privilege log, and (3) designate a Rule 30(b)(6) witness.

SO ORDERED.

_James C. Francis IV_
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       February 5, 2016

Copies transmitted to:

Gregory K. McGillivary, Esq.
David W. Ricksecker, Esq.
Diana J. Nobile, Esq.
Molly A. Elkin, Esq.
Robin L.S. Burroughs, Esq.
Sarah M. Block, Esq.
Diana J. Nobile, Esq.
Woodley & McGillivary
1101 Vermont Ave., N.W., Suite 1000
Washington, D.C. 20005

Hope A. Pordy, Esq.
Spivak Lipton Watanabe Spivak & Moss LLP
1700 Broadway, Suite 2100
New York, NY 10019

Adam S. Gross, Esq.
Felice B. Ekelman, Esq.
Steven J. Seidenfeld, Esq.
Sarah K. Hook, Esq.
Jackson Lewis P.C.
666 Third Ave.
29th Floor
New York, NY 10017

Jeffrey W. Brecher, Esq.
Jackson Lewis P.C.
58 South Service Rd., Suite 250
Melville, NY 11747

Andrea M. O'Connor, Esq.
New York City Law Department
100 Church St.
New York, NY 10007